Good morning. Michael Haddad appearing for the petitioners. I'd like to get right to the two main issues in the case. The district court's collateral attack on the bankruptcy court order and the jurisdictional problem. Since the petitioner's entitlement to mandamus relief is fully briefed, and I'll just move beyond that unless the court would like me to address any of the mandamus issues right now. Okay. The district court may not issue an order that collaterally attacks the order of a bankruptcy court. It's beyond the district court's authority to do that. That's clearly settled law. The Solotex case from the U.S. Supreme Court explained that in very strong terms recently. Now, that's exactly what the district court here did. What order is being collaterally attacked, the bankruptcy court? A bankruptcy court order. Yes. And that no longer exists, does it? No. First of all, the order still exists. It hasn't been vacated. The bankruptcy itself for PG&E is still an open proceeding. There's been no final decree closing that bankruptcy. Chapter 11 has been confirmed. The chapter 11. The case has not been closed. Is that what you're saying? The plan has been approved, Your Honor, but the case has not been closed. If you look at the case. Has the automatic stay in general been lifted? I'm sorry, I couldn't hear you. Has the automatic stay in general been lifted as a result of the confirmation of the plan? I believe it has, Your Honor. All right. So ordinarily, an order modifying an automatic stay doesn't survive the confirmation of the plan because there's no longer an automatic stay to modify, right? I'm not sure of the answer to that, Your Honor, but this is more. I am. There's a case called In Re Allen that says so in 300 F 3rd 1055. But this is more than an order modifying a stay. It's also an order abstaining from Federal court jurisdiction, Your Honor, specifically ordering that the case. How does a court get to abstain from Federal court jurisdiction? Doesn't the district court have to be right about that, that you can abstain from bankruptcy court jurisdiction, but you can't abstain from ordinary Federal court jurisdiction? No, that's incorrect, Your Honor. There are two ways to abstain. There's mandatory abstention and permissive abstention. But ordinarily, Federal district courts don't get to abstain from hearing cases that are properly before them because they feel like it. Yes, absolutely, except in bankruptcy where there's different considerations. In bankruptcy, you can do it if all you're dealing with is the ancillary jurisdiction of bankruptcy court, but not if you're dealing with the ordinary jurisdiction of the district court. Well, allow me to explain why I believe that the law is different than that. Under permissive abstention, which is 1334C1, that permissive abstention specifically applies when there are alternative grounds for Federal court jurisdiction, and the bankruptcy court is the court that should make that decision of permissive abstention. That's exactly what Judge Montali ordered in the PG&E bankruptcy in his detailed opinion. So permissive abstention, when it only applies if there are alternative Federal court jurisdictional bases, like diversity, the statute itself means that there can be Federal court abstention, including when there's other bases for jurisdiction, like diversity, like removal jurisdiction. And that's exactly the grounds on which Judge Montali ordered abstention in his detailed ruling. Now, this is a purely state law case. It was filed in state court, removed to Federal court. In the course of discovery, it was a little difficult, but the plaintiff determined that there was potentially some liability on the part of PG&E, which was a California defendant. The plaintiff is from Alaska. The product liability defendant, ALTEC, is from Alabama. So if PG&E were added, the plaintiff believed that would defeat diversity. We filed the motion and fully briefed it, and then the district court said, wait a minute, there's a bankruptcy stay against PG&E. So it gave us time to go lift that stay. And the plaintiff and ALTEC filed a stipulation and proposed order with the district court, giving the plaintiff time to talk to PG&E and try to get that stay lifted. And in that stipulation and order, it specifically referenced Judge Montali's opinion in the PG&E bankruptcy, INRI PG&E 279 Bankruptcy 561. That's the detailed opinion where Judge Montali held, number one, the bankruptcy court is in a better position to make decisions about abstention, including permissive abstention where there's alternative grounds for jurisdiction, than the district court is. Number two, the bankruptcy court has the power to enter, quote, Number three, Judge Montali's decision regarding abstention in that situation would be Could we go back to the, which statute were you saying gives the authority to abstain from hearing a proceeding that arises under other Federal court jurisdiction? 1334C1. Doesn't it say that courts may abstain from hearing a particular proceeding arising under Title XI or arising interrelated to a case under Title XI? In other words, where does it say that you can abstain if the jurisdiction is not based on the connection to the bankruptcy court but on something else? Because 1334C2, which is a mandatory abstention provision, specifically requires that there be no other grounds for Federal court jurisdiction. And the Ninth Circuit has interpreted C1, the permissive part of abstention, to be applicable where there are other grounds. And that's the case that holds that is Inree, Tucson Estates, 912F2, 1162. There are 12 factors, and factor number five is the presence of other grounds for jurisdiction. Another important point that Judge Montali explained in the PG&E bankruptcy opinion is that when lifting an automatic stay, the bankruptcy court must decide whether a related personal injury case should proceed in Federal or State court. This is the understanding that the plaintiffs had when we went to Judge Montali. It clearly is the understanding that PG&E had, since this was an opinion in their own case. And it should have been the understanding that Alltech had, because that was part of the stipulation that Alltech signed, this very opinion stating that. Now, counsel for the plaintiffs went to PG&E and asked them to stipulate to lift the stay. PG&E was fully informed of the status of this case, that it was originally filed in State court, removed to Federal court, that plaintiff was seeking to amend the complaint to add PG&E, and that plaintiff was seeking to remand the case back to State court. PG&E's counsel drafted the stipulation, and he apparently forgot that he had been removed to Federal court because he talked about the State court action. And the stipulation he proposed would lift the stay for the State court action, which he believed was in State court, and allow that case to go forward in State court. It was not surprising that PG&E's counsel thought that, because Judge Montali noted in his bankruptcy court order that PG&E generally stipulated to decide all the personal injury claims in that case in State court rather than Federal court. Now, when I got this stipulation, which was incorrect in that regard because it talked about the State court action in State court, I revised it, and I sent it back to the PG&E counsel, and I explained that the case was pending in Federal court. So that's what the final version says. It's been removed to Federal court, and the final version of the stipulation also says that the plaintiff is seeking to amend the complaint to add PG&E and remand the case. And rather than changing the wording of the stipulation drafted by PG&E too much, I left the definition of State court action as that term was put in there by PG&E's counsel and just explained that State court action has been moved to Federal court. So that's the definition of State court action, originally filed in State court, now pending in Federal court. Stipulation was submitted to Judge Montali, and he ordered that, number one, the state was lifted, and, number two, that, quote, the parties were to litigate the State court action, pending in Federal court, to final judgment in the Alameda County Superior Court. That's the clear wording of Judge Montali's order. That order was presented to the District court then, and the District court acknowledged that the bankruptcy court order, quote, does not allow the PG&E claims to be adjudicated to final judgment in Federal court, unquote. That was what the District court said in the court's opinion. The District court granted the motion to amend, adding PG&E, and in contravention of the bankruptcy court order, ordering those claims to go forward in State court, the District court ordered the case to proceed in Federal court, which was a collateral attack on the bankruptcy court's order. You know, one of the things that occurred to me here, the bankruptcy court being what we call an adjunct of the District court, and the District court, I suppose, could change its previous order at some time. Why couldn't it change the order of the bankruptcy court? As apparently the judge, the District judge decided he wasn't going to permit Judge Montali to determine that people could not proceed according to the Federal jurisdictional law. He just thought that Judge Montali was wrong in that kind of a limitation, so he wouldn't abide by it. But this is all the District court. The permissive abstention statute was amended about 10 or 12 years ago. It used to be the bankruptcy court would make recommendations to the District court, and the District court would actually enter whatever order the District court thought was appropriate. And then Congress changed that and gave the power to actually make the order to the District court. Judge Montali addressed that history and that issue that you just raised, Your Honor, and Judge Montali concluded that the bankruptcy court is the only court that can make that abstention decision. Now, whether or not that's correct, the Supreme Court has said that when a bankruptcy court makes an order, even if that order is wrong, it can't be collaterally attacked or changed by a District court. The proper procedure is to either go back to the bankruptcy court and have that court modify it or appeal it in the bankruptcy court. But that's what the U.S. Supreme Court has said, and that's the doctrine of collateral attack, and that's what was violated by the District court in this case. Now, the District court went beyond its authority when it ordered the case to remain in federal court against a clear wording of the bankruptcy court order. And whether or not the District court agreed and whether or not the bankruptcy court was correct, the District court was required to follow that bankruptcy court order unless the bankruptcy court modified it or it was appealed through the proper channels of bankruptcy. Now, I'd like to move on to the second issue, unless the court has questions or comments. The second issue is a no local defendant issue, and whether or not that statutory requirement for removal jurisdiction is jurisdictional. The plaintiff contends that it is. It's an open question in the Ninth Circuit. It's been decided by some other circuits both ways. And the Central District of California. It's true that in all of the other cases, there was a question as to the propriety of the removal in the first place. In other words, there were either waiver questions or there were other questions that implicated the propriety of the removal in the first place. Here, there's no doubt that the removal was proper in the first place. Yes, Your Honor. That's right. Whatever happened, happened later. Right. Is there any authority for the proposition that the court would lose jurisdiction if the jurisdiction was right in the first place and it was right in the second place? That is, there was subject matter jurisdiction under ordinary original jurisdiction once the person was added that you can now go back to state court by adding somebody? Yes. Removability is judged at the time the complaint is filed and at the time of removal. But questions about whether a case should be remanded depends on the situation at the time that remand is requested. Yes. But what authority is there for the proposition that all of the cases that you rely on, which suggests that the no local – all the cases about the no local defendant rule are cases in which there was a question of the propriety of the removal in the first place. Yes. Which only came up later. Right. There were not any cases in which there – in which the removal was definitely proper when it occurred. Section 1447E, which deals with proceedings after removal, says that if a district court joins another defendant whose presence would defeat diversity or impact subject matter jurisdiction. But it doesn't do that. We know that. But that's the whole question, Your Honor. Well, you're alighting two questions, though, is what I'm trying to say. You're using cases in which there was an issue as to the propriety of the removal in the first instance, and there's a question as to whether that's a jurisdictional problem. The fact that the removal had an extra person in there who wasn't allowed to be removed. And now you're throwing those – using those cases to deal with a situation in which the removal was perfectly proper. And not only that, but if there were original jurisdiction, there would be subject matter jurisdiction. And you're trying to use the term subject matter jurisdiction to get to – in a different sense than any other case I've been able to find. I haven't been able to find any other case exactly like this one either, Your Honor. Exactly. There's the Hurt case from the Eighth Circuit on which we rely and the WRS case from the district court. Those were all cases in which there was an issue as to the propriety of the removal, right? Yes, yes. Okay. What they did hold, though, was that the no local defendant rule was jurisdictional. Meaning that later on you could turn around and say you couldn't – you weren't allowed to remove this because there was a local defendant. Yes. But not that adding somebody later on now bumps out a jurisdiction that was proper in the first place. That was not the factual situation in those cases or any case I've been able to find for that matter. We're dealing with something – But what would be the sense of a rule like that? I'm sorry? The sense of a rule like that would be to allow the plaintiff to basically redefine themselves back to federal court, state court pretty much at will. It's no different than if the plaintiff were a California party instead of an Alaska party and added PG&E, a California defendant. That would actually defeat diversity. That would defeat subject matter jurisdiction in the traditional sense, but it wouldn't defeat this special rule that only applies to remand, to removal. Allow me to just try to follow through with the argument since there isn't a case directly on point, Your Honor. But if diversity were actually defeated because the parties were non-diverse on the plaintiff's and the defense side, under 1447E, the court would be required to either deny joinder or allow joinder and remand. Those are the only two choices, and that's what this circuit held in the Enichez case, 985F2nd 1031. The plaintiff contends, based on the authority of Hurt and our argument in the is unique to removal because removal jurisdiction is entirely statutory. It's not under Article III. The court's removal jurisdiction is limited by what Congress has given it under statute. You could just walk in two years later and say I'm going to add somebody to this case and the whole thing has to go back to federal court, even though if the case were filed there in the first place, it would be a perfectly good case. If the case – yes, because removal jurisdiction is more limited than original subject matter jurisdiction. And that's explained, I believe, thoroughly in the Hurt case. Is there any other instance in which something that happens afterwards and doesn't defeat original jurisdiction would lead to a remand? I haven't done that research, Your Honor, so I can't say exhaustively if there's other situations like this. As far as you know, there isn't. As far as I know, there isn't. I don't know. I am not aware of anything like that. But this is jurisdictional according to Hurt, and according to the concept that removal jurisdiction is a creature of statute. It's not constitutional. This isn't. What is jurisdiction according to the other cases is not having the proper parties when you remove. Right? That's what they were talking about. Right. Because that was the situation in those cases. But the concept of joining a party and then destroying removal jurisdiction in the course of a case even two years later is something that Congress – In those instances, they're not destroying removal jurisdiction. They're destroying any jurisdiction. Yes. But removal jurisdiction, again, is a creature of statute. It's something more limited than original subject matter jurisdiction in the Article 3 sense. And that's why – that's the whole question facing this Court, whether the requirement of no local defendant rises to the level of a jurisdictional requirement. And I believe it does because it's part of the statute, and this Court has no removal jurisdiction, which is different than original subject matter jurisdiction. The Court has no removal jurisdiction other than that which Congress gives it. In fact, the Fifth Circuit in the Doliak case, which we cited, cites the Congressional Report for Section 1447E, which says that section also helps identify the consequences that may follow removal of a case with unidentified fictitious defendants. A defendant removes a case with a DOE defendant that may later be amended to add another defendant who would defeat diversity at its peril. Now, yes, this is not exactly like the normal situation under 1447E because we don't have a – we don't have the lack of diversity anymore, but we still have the lack of removal jurisdiction the plaintiff contends. But, you know, you have a lack of removal jurisdiction at a time you no longer need to remove. It's already been removed. Why does removal statute apply after that? If it's properly removed, then why do you need for the rest of the case to have removal jurisdiction? After that, it seems to me you go to the other statute, which tells you what the procedure is after removal. And that has a set of rules that apply once it has been properly removed. Removal jurisdiction is the only jurisdiction that the district court in this case will ever have over this case. The only time original jurisdiction comes into play is when the plaintiff files the case in federal court based on original jurisdiction. But why do you need removal jurisdiction? They could have had original jurisdiction. Yes. If the plaintiff chose to file it. And they could have had removal jurisdiction. Now they remove it. Then what difference does it make that they got there by removal if there's jurisdiction in either original or removal? There's no jurisdiction. There's jurisdiction if the case had been brought there by the plaintiff, but not if it was brought by the defendant. Because when the defendant removes the case and the defendant selects federal court, jurisdiction is different. Even diversity jurisdiction, because it's limited by the removal statute, which adds additional jurisdictional requirements, which make that jurisdiction more circumscribed than it would be if it were original jurisdiction. Allow me to just read a quote from the Hurt Case, the Eighth Circuit, which I believe deals with this issue directly. The Eighth Circuit said, While a defendant of necessity cannot invoke the federal court's original jurisdiction, it may in some situations invoke the court's removal jurisdiction. Because the requirements to invoke the court's ---- Which looks at the case as of the time of removal. And as of the time, which is what they were doing in that case. And as of the time of removal, the removal jurisdiction was proper. Right? And there's nothing in that case that suggests that you look at it after the removal to find out whether the removal was proper. Well, we know the removal was proper. It was certainly proper. Right. Nothing in that case addresses that question. Right. There's no case, Your Honor, saying anything pro or con. I understand that. So just stand here and argue to us that it does address it. It's not very helpful. You're right. There's no authority pro or con exactly, but I believe it's helpful because it answers Judge Reinhart's question, I believe. I'm going to reserve the rest of my time for rebuttal. Good morning, Your Honors. May it please the Court. Jeff Williams on behalf of Real Party and Interest, Altech Industries. If I may, as I think sometimes is helpful, begin by responding to the last points that counsel was raising and the Court was asking about. Let me talk about the no local defendant issue. Briefly, let me first say, because I'd be remiss if I didn't, that we have to keep in mind that we're here on a petition for writ of mandamus, and as the Bauman Court held in 1997, one of the things the petitioner must show is that the district court's order here was clearly erroneous as a matter of law. Citing Judge Reinhart's concurring opinion in King, they said, we will not grant mandamus, quote, simply because a district court commits an error, even one that would ultimately require reversal on appeal. That's the canvas against which we have to address the no local defendant issue. It's an interesting issue, and I'd like to address it. But when seven of eight circuit courts have held, as we are contending should be the case here, and that is that removability is a procedural question, not a jurisdictional one, and where there is no U.S. Supreme Court or decision of this circuit on point, it's pretty clear that Judge Walker's ruling on the no local defendant issue was not clearly erroneous as a matter of law, and the petition should not be issued on that basis. So now I'm going to ask you the same question I asked your opponent. Those cases don't deal with this problem, right? You're right, they don't. And let me tell you why I think they don't and why I think we're even talking about this issue. And a district court, as I understand it, understood that and basically focused on the time of removal and said essentially what I've been saying, i.e., that you look at the time of removal, it was appropriate time of removal, and after that you look at general subject matter jurisdiction. The other cases had a different and harder problem, which was that the removal wasn't proper when it happened. You're absolutely right. And the only cases, even the ones that we have that we believe are more suggestive that it's a procedural issue and not a jurisdictional one, are ones that come up in the context that you point out, and that is typically where removability or where there was a problem with removability at the time of removal and the question was whether or not that could be waived. And once it was cured, whether they could simply look to see that we have subject matter jurisdiction. Whether it could be waived or cured, basically. Yes. And let me suggest to you an approach that I think makes everything almost perfectly clear and fit almost perfectly. If we could get away, and if this Court could get away from the notion of removal jurisdiction and if we instead substituted the term removability, a whole lot of things make a whole lot more sense. We have subject matter jurisdiction in this Court based upon diversity of citizenship found in 28 U.S.C. Section 1332. When I was getting ready for this argument and was tired of looking at the limbs and the trees and the bark and all that stuff and tried to look at the forest, I stepped back and realized that 28 1332 is found in Chapter 85, which is entitled District Courts, semicolon, Jurisdiction. Section 1441, 1447, the ones that deal with removability, are in Chapter 89, which is entitled District Courts, Removal of Cases from State Courts. What you need to remove a case from state to federal court is subject matter jurisdiction in the federal court, in this case diversity, and the other requirements that Chapter 89 imposes on you. You have to file it within 30 days of the pleading or paper that puts you on notice. You have to have, and importantly here, the absence of any local defendant. So there is an overlay. There is an additional requirement, but that is only a requirement to determine whether or not it's removable. You only look at whether it's removable at the time you do the removing. And as Your Honor correctly points out, there is no case that has said that when you add a party that doesn't affect the underlying diversity, the underlying subject matter jurisdiction, that there is any problem with the court retaining jurisdiction. That's exactly what we have here, complete diversity not affected by the addition or the attempted addition of PG&E to this case. I'm assuming the point in which you argue makes logical sense and all. Suppose that at the time the defendant is added here, the PG&E, motion is made to remand. Does the district court have any discretion to remand at that time or because there is no discretion, is the district court foreclosed from granting? If at the time we remove the case, if you haven't changed that set of facts, if at the time we remove, which was before PG&E was in the case, the district court would have no discretion. There would be no discretion when a removal motion is made. There is subject matter jurisdiction based upon diversity of citizenship. None of that has ever changed, and no one suggests that it does. And the evaluation of removability is at the time the removal is effected. I'm assuming that when the motion for remand comes, the district court would look at it and say, look, I've still got diversity of jurisdiction. The removal was proper at the time this case was removed. That's the end of it. I've got no discretion. I must keep this case here. Correct. Correct. And that's exactly what Judge Walker, we believe, correctly found here. Even though the you've added, you said nothing happened after the removal. But when you add the party, are you saying there's no discretion there? Correct. There's no discretion in the district court to remand the case because, A, there's still complete diversity, and therefore there's no discretion. There are a number of cases, district court cases, which have held to the contrary, aren't there? No, I believe, Your Honor, those are cases in which the defendant that's been added destroys diversity, in other words. No, I'm talking about where it's not where it's discretionary, not where the subject matter jurisdiction is destroyed. I don't believe there are any cases that hold that where the case was removable at the time removal was effected and subject matter jurisdiction based upon complete diversity of citizenship remains that the district court has discretion to remand. I don't believe there is such a case. At least, if there is, I have not seen it. We have the power to look into whether the addition of the defendant was for the purpose of what, defeating removal or effecting removal? There's always the ability to look behind the pleadings and determine whether there is a sham party for purposes, solely for purposes of defeating diversity, and that is within the district court's discretion. But, of course, that is not the situation here. Plaintiffs added a party who does not affect the diversity of citizenship, and they added it, of course, almost two years after the original action was filed. But in this case, as I said, if we look at it as a question of removability, and one of the elements of removability is subject matter jurisdiction, other elements are the absence of a local defendant at the time the removal is effected. If we look at it that way and don't get hung up on this removal jurisdiction, because I really think that that's what has led so many courts to have so many imprecise, you know, discussions of this issue, because we really aren't talking about jurisdiction when we talk about removal. Well, one case is there because of removability. There's no reason that the courts could not say it's here under a removability rule, and it's not here because of the normal jurisdiction where it was filed originally, but it's here because of removability. And if, in our discretion, we think things have changed and we no longer think it's appropriate, that under the removability rule rather than under the basic jurisdiction, we could exercise discretion to remand. I would suggest, Your Honor, that if I understand you, that if the changed circumstances don't affect the underlying subject matter jurisdiction, I think that's where the unflagging obligation to hear courts, of which the district courts have original subject matter jurisdiction, would kick in and there would not be discretion based upon some changed circumstances that don't affect the underlying jurisdiction. And I haven't seen a case that's successful. Are you planning to address the bankruptcy issue? I'd be happy to. Or the issue. I'd be happy to. The bankruptcy issue is a – I kind of shake my head every time I sit down and look at it. It's a classic tail-wagging dog case, and it's a case in which the tail here is really, really tiny and the dog is a St. Bernard. The only reason we're here talking about the bankruptcy court order is because plaintiffs needed to get the automatic stay lifted in order to proceed against PG&E in Judge Walker's courtroom in district court. First of all, my first question is sort of the conceptual one of does the – I understood the district court to assume, and I assume – I would have assumed, but I now have this case cited to me, the Henry Tucson case, that the abstention authority of the bankruptcy court is limited to its own bankruptcy-based jurisdiction and doesn't extend to doing what Federal courts ordinarily cannot do, which is to refuse to exercise their subject matter jurisdiction. Now, is that right or wrong? You're correct. All right. So what about this case that has been cited to the contrary? I am not familiar with the case that you referred to, the Tucson case. The case that was cited by your opponent to the contrary, which I looked in his brief, and I think it's called Henry Tucson or something. Let me – Let's see. I did find it. It's page 16, note 8, where it is said that in this Tucson Estates case, that factor number 5 of the 12 factors is whether there are other bases for a Federal  I mean, I would think the answer to that would be if there's other bases for Federal court jurisdiction that you don't abstain. But the implication here, I guess, is that that's not what the case says. I'm going to, frankly, have to take a minute and look at that in a second, Your Honor. Okay. Go ahead. But the – I don't think you even get to that when you look at the nature of the order here. Plaintiffs went off. They negotiated with counsel for PG&E to obtain an order for the purpose of lifting the stay. PG&E's counsel drafted an order, all of which is in the appendix attached to our brief, that made reference to the state court action in this case. It was revised by counsel for plaintiffs and sent back with the limitation that PG&E's counsel has clearly made clear now they did not intend as a condition of lifting the stay. And there's no suggestion that Judge Montali had that in front of him, that it be remanded to state court. And the letter from Mr. Haddad back to PG&E's counsel says that we only included that because it will probably be remanded to state court. So this almost parenthetical got inserted into the order. Judge Montali signed it for purposes of getting the stay lifted. Petitioners conceded below, as they do here, that the issue of whether or not the case should be remanded to state court was never briefed nor decided by Judge Montali. He was simply signing a stipulated order that had been prepared for him. And every reference that you've heard to Judge Montali's decision relates to these 1,250 chromium cases that he issued an opinion in. And they are much different from our fact situation for a couple of reasons. Most significantly, those cases had filed proofs of claim in the bankruptcy proceeding in front of Judge Montali. Alltech Industries has never been in front of Judge Montali. We have never had the court exercise jurisdiction over us. There's never been a proof of claim filed here. The only diversion towards the bankruptcy court in this case was when plaintiffs, almost two years after they'd filed the case, decided to bring in PG&E. They needed to have the stay lifted. They went off on their own without any involvement on my part or my client's part, negotiated the stipulated order, which Judge Montali signed. Now they try to take the language and the discussion from Judge Montali about the propriety of abstaining from deciding 1,250 cases alleging chromium-related disease to argue that somehow that should apply here. He never said it did. He never analyzed this matter in that light. They acknowledged that he did not decide this case should go back to the state court on a remand. He simply signed an order that had been prepared that included that to that effect. Well, could this ñ this was both a stipulation and an order, and insofar as it affects PG&E and insofar as it appears to continue beyond the date of the bankruptcy by saying to final judgment, why doesn't it ñ leaving you out of it, would it bind PG&E just as a contract? Well, that's what Judge Walker found that it might do. He said in order to proceed in federal court, I think you need to go back and get the stay lifted to provide that because on its face it doesn't seem to do that right now. And so what they now try to do ñ Superintendent Watt, I'm sorry. It doesn't seem to grant me, Judge Walker, permission to proceed with this matter. It lifts the stay, but as part of that lifting of the stay, says for the case in order to proceed to judgment in state court. So even though it was not intended, it wasn't briefed, it wasn't argued, and it wasn't decided by Judge Montali, Judge Walker recognized that the stipulated order that he had been presented with limited the lifting of the stay to allowing the case to go back to state court. So he said in order to stay here and proceed in front of me, which is where I believe you should be, you're going to need to go back and get a modified order allowing the stay to be lifted for purposes of proceeding in district court. And, of course, now they would argue that we're stuck in state court because we have a bankruptcy from which PG&E has emerged and there is no longer any Chapter 11 jurisdiction over. So it was never taken back to Judge Montali? It was never. If I recall correctly, Your Honor, his decision from which this petition is taken was March 22nd of this year, and April 12th, as we request the Court to take judicial notice of, is when PG&E emerged from its Chapter 11 proceedings. If Judge Walker didn't think that he could simply interpret it so as not to apply or supersede it, then how can we do that? I'm sorry. I don't think I understand. Your understanding of Judge Walker's decision was that in the end he did not think that he could either interpret this order so as not to apply to the current circumstances or override it himself. He sent the parties back to Judge Montali to essentially redo it. But that didn't happen. As long as there continued to be a stay that needed lifting, he was saying you need to go get it lifted with a provision that it may proceed in federal court in my courtroom. Now there is no longer any stay that needs lifting. Why did we have all this discussion about whether he carefully considered the order, whether he intended it to apply to this kind of a case or only the 1,600 other cases? It seems to me you made that whole argument, and then at the end you say, well, yes, but it did bind us. And the only reason it doesn't is because the stay is no longer, because the bankruptcy is no longer. No, we believe that Judge Montali didn't have the authority. Once it decided to lift the stay and that it abstained, would abstain from deciding it itself, it had no jurisdiction. Judge Montali did not to keep, as Judge Berzon, I think, pointed out originally, to tell Judge Walker whether he could or could not. But Judge Walker, that was not Judge Walker's ruling. Judge Walker thought he did have it sufficiently that he needed permission from Judge Montali to lift it. In order to have the stay lifted but not to decide the remand issue. That's my point, as Judge Walker made it clear, that Judge Montali's order didn't clearly say the stay is lifted so that you may proceed to litigate against PG&E in U.S. district court. But he's never said that Judge Montali purported to order me to remand it, and if he did, he didn't have the jurisdiction or the authority to do so. And it doesn't make any sense for the bankruptcy court to purport to tell the district judge in a properly removed case. So what you're saying essentially is that insofar as it purported to go beyond the bankruptcy, it couldn't do that. It couldn't. But insofar as it purported to limit what happened during the bankruptcy, it might have been an error, but there still had to be a lifting of the stay in order to continue in any place. Right. At worst, if the stay were still in effect, they'd have to go back and get it lifted, and if they didn't, they couldn't add PG&E in the district court proceeding in front of Judge Walker. But now that's a moved issue. So to wrap up, that's why I think that the bankruptcy question clearly does not deserve mandamus relief. There's no collateral attack that's been entered here. Just to point out what I think is the obvious, the Celotex case that petitioners rely upon involves a district court order that allowed the enforcement of, I think it was a bond, against a debtor in the bankruptcy. That clearly conflicted with, it clearly related to the bankruptcy itself. There is nothing about Judge Walker deciding that he does not have to remand this case that conflicts with any order that is inherent to the bankruptcy court, and that's why this is not a collateral attack on the bankruptcy court's orders. Thank you. What the district court actually wrote in its opinion was that, quote, the stipulation and order can be read to imply that the PG&E bankruptcy court chose to abstain from exercising bankruptcy jurisdiction, unquote. That's what Judge Walker wrote. And then Judge Walker wrote that the bankruptcy court order, quote, does not allow the PG&E claims to be adjudicated to final judgment in Federal court, unquote. And the order is clear on its face. It says the claims are to be litigated to final judgment in State court. Now, what he said was that he could abstain from bankruptcy jurisdiction, and what he then went on to say is he can't abstain from nonbankruptcy jurisdiction. In general, it's not useful to argue in subpieces, because we know what he said. We read it. Right. Okay. That's how Judge Walker chose to interpret Judge Montali's order. Right. It's still a collateral attack on the order, Your Honor. If he wants to interpret it in a narrow way or in a different way, he's not allowed to do that. It's a collateral attack because his interpretation went against a clear wording of that order, which said the case is to go forward to judgment in State court. Judge Montali explained in his own opinion, which I believe is very important in this situation, about what was the rule of the case, the law of the case in the bankruptcy. And he was saying that he could do total abstention, total Federal court abstention. That's what In re Tucson Estates says as well. And that specifically is the case. Where is that opinion of Judge Montali's? 279, Bankruptcy 561. It's not in your petition for mandamus. I'm sorry? It's not in your petition for mandamus. No, Your Honor. It's a published opinion. In that opinion, Judge Montali held that when lifting a stay, the bankruptcy court must decide whether or not to abstain. That is, whether the case should be, the personal injury case should be litigated in State court or Federal court. He also pointed out that PG&E has generally stipulated to State court in this particular bankruptcy. And that was a case in which there was an alternative of Federal court jurisdiction other than the bankruptcy jurisdiction. In re Tucson Estates, it talks about the 12 factors. About the case that you just cited to us, the Montali case. No, no. The PG&E case. No, it wasn't. The particular claims he was dealing with didn't have an alternative basis. But permissive abstention specifically applies when there is an alternative basis, and that is the grounds on which Judge Montali ruled that abstention was appropriate in the injury chromium claims. So the case that you cited to me, I'm having a problem with this. The case that you cited to me a minute ago in the 279 bankruptcy was a case in which there was an alternative Federal jurisdiction, not simply bankruptcy jurisdiction. No. The case I just cited to you, the bankruptcy court case, is the opinion that Judge Montali wrote earlier in this very PG&E bankruptcy. Right. Where he granted abstention to 1250 chromium claims. Where there wasn't otherwise Federal court jurisdiction. Correct. All right. So where are you telling me that he did rule that even if there is otherwise Federal court jurisdiction, he can nonetheless abstain? He didn't say that because that wasn't at issue. What I'm saying is, Your Honor, is that he ruled that, number one, he must decide whether or not to abstain when lifting a stay, and the basis on which he made that ruling in the opinion I cited to you was permissive abstention, which we discussed earlier. Right. That involves the 12 factors set forth in Re Tucson, one of which is that there are alternative grounds for jurisdiction. I'd like to spend just a few moments going back over the other issue. Now, the defendant, excuse me, Mr. Williams says he'd prefer to get away from the concept of removal jurisdiction. But this Court has repeatedly held that removal is a question of Federal subject matter jurisdiction. That's a quote in the Price-Fries case and many other cases. Well, you're considerably over time already. We'll give you two minutes if you want to finish this issue. Okay. Removal jurisdiction, when it's the basis for getting into Federal court in the first place, you can't simply shift to original subject matter jurisdiction. The removal requirements continue to run with the case because that's how it got here in the first place. And in the Caterpillar case, the Supreme Court case which we've addressed in our briefs, the Supreme Court dealt with this issue in some ways. And in that situation, there was a case, a year had gone by, and after a year went by, one of the defendants removed the case in violation of the one-year requirement. We've got to remove it before one year passes. And by the time of judgment, there was original subject matter jurisdiction, although that removal flaw continued to run with the case. And the U.S. Supreme Court held that because judgment was entered, considerations of economy and other conservation of judicial resources required that that judgment be upheld. But that, if a Federal court recognized that problem earlier in the case, the court was required to fix it earlier, only at judgment is it something that can't be remedied anymore. This is our opportunity before judgment. In fact, this mandamus petition is a very ‑‑ But, again, I think Judge Berzon, that was a case where there was a flaw in the original removal, right? Yeah. A removal that happened over a year after the case had been filed. Well, that's the distinction that we're trying to get at is distinction between cases in which there's a flawed removal and cases in which the removal was perfectly proper, but something happens afterwards which would have made it unremovable. Those are two different circumstances. I wish it wasn't so hard for all of us. I wish there was some case law either way. Well, there will be after this, maybe. Maybe there will, yes. Thank you, Your Honor. All right. Thank you all very much. That takes care of this morning. The court case just argued will be submitted. The court will stand in recess for the day. Thank you. Thank you. Thank you.
judges: Reinhardt, Thompson, Berzon